## PLIMPTON *v.* WINSLOW.

*(Circuit Court, D. Massachusetts.* February 3, 1883.)

PATENTS FOR INVENTIONS—PARLOR SKATES.

> Where skates containing an improvement on an earlier patent held by the same inventor were in use or were offered for sale by the same inventor, whether actually sold or not, more than two years before his application for his second or subordinate patent, the latter is void.

In Equity.

*T. W. Clarke,* for complainant.

*George L. Roberts* and *J. L. S. Roberts,* for defendant.

LOWELL, C. J. The plaintiff was the pioneer in the invention of parlor skates. In his first patent, granted in 1863, and which, therefore, expired in 1880, he shows the principle of all subsequent inventions. In his second patent, granted in 1866, which is now in suit, No. 55,901, he made "certain improvements in roller and other skates, patented by me, January 6, 1863," which consisted "in a novel and improved construction and arrangement of the several parts, whereby several advantages are obtained over the old or original mode of construction, as herein fully set forth." The defendant,

who was formerly in the employ of the plaintiff, has lately made improvements in parlor skates, for which he holds one or more patents. He was enjoined at the preliminary hearing because he held a patent which, on its face, was subordinate to that of the plaintiff, and the skates made under it had, as I thought, infringed upon, the plaintiff's rights. Since that time, a new defense has been developed and sustained by a good deal of evidence, which appears to be honest; and the question is of its sufficiency. That defense is that this patent was applied for August 19, 1865, and that more than two years before that day, that is, before August 19, 1863, the invention had been in public use, or on sale, with the plaintiff's consent and allowance, which, by St. 4 July, 1836, § 6, (5 St. 119,) as modified by St. 3 March, 1839, § 7, (5 St. 354,) is a statutory forfeiture.

One witness testifies to the use of a skate, Exhibit 1, by his wife, who is now dead, in June, 1863; another, to his receiving one like Exhibit Forbes Roller Skate, from Mr. Doane, in July, 1863. Doubt is thrown on both these dates by the evidence for the complainant. Other witnesses speak of the use of skates like these exhibits, by the plaintiff, and by others, with his consent, in the city of New York, in May, 1863. After the lapse of 19 years, the exact month in which a witness saw a particular thing must be doubtful. One witness happened to be an editor of a newspaper, and he produces an article written by him and published in his newspaper, May 16, 1863, which gives an account of the opening of the Apollo Rooms for parlor skating, in the course of which he says: "Mr. Plimpton was there with his new patent parlor skate, which appeared to be the favorite, as it enabled the skater to take many of the 'rolls' and 'edge movements.'"

The "patent" referred to is that of 1863, and it is proved that the skates like No. 1, and Forbes, were marked as patented in 1863, and there is no evidence that the old and structurally-imperfect form of skate was used at this time, though they were clearly within the first patent. Only one of the witnesses ever saw the old form of skate, and he saw it before 1861.

Another witness, Doane, who appears to be candid and cautious, had a conversation with the plaintiff in May, 1863, about his parlor skates, and about Doane's furnishing the wood parts for some of them, which he afterwards did, but later than August. But on or about the month of May, the plaintiff sent him certain castings, etc., to inform him what sort of a skate he made, and Doane made up the

Forbes skate, but whether in July, as Forbes says, or in December, as Doane says, I do not decide. Doane was twice recalled, by consent. At his last examination he testified to receiving from the plaintiff several copies of a card, one of which he produced, which contains Plimpton's price-list for three patterns of parlor skates. The price-list is not dated; but it is believed by the witness that he received it early in 1863, and before he bought a moulding machine in May, 1863.

There can be no reasonable doubt, I think, that the skates were like those produced in evidence, and they are substantially like the patented skate of 1866. Several other witnesses testify to a use in New York, which they think was before August, 1863.

The complainant offered no evidence to explain or contradict any of the testimony, except as to the dates of the sale or gift of the two exhibits. If the price-list was published in May, it would be immaterial that no skates were sold before the nineteenth of August, because they were "on sale." The fact does not appear improbable, when we consider that all these skates were marked, and properly marked, as patented in 1863, and it is altogether probable, in the absence of all explanation by the plaintiff, that the plan of obtaining a subordinate patent for his special structural improvements was not thought of until after 1863, although the improvements had been made soon after the first patent was obtained, and before the invention was actually practiced.

I am constrained to say that I find the defendant to have proved that the new skate was in public use or on sale, with the plaintiff's consent, before August 19, 1863.

The defendant has used parlor skates which, under advice of counsel, he thought did not come within the scope of the injunction. Whether he was right or not can now affect only the question of costs, if it can have any effect. I reserve that question. Decree for the defendant.