GLOUCESTER ISINGLASS & GLUE Co. *v.* BROOKS and others.

*Circuit Court D. Massachusetts.* February 13, 1884.)

1. PATENTS—EXTRACTION OF GELATINE FROM FISH-SKINS.
 Letters patent No. 167,123, for a process of extracting gelatine from fish-skins, sustained against letters No. 177,764, granted to another person for a like process, and the latter held to be an infringement.

2. SAME—DECISIONS OF THE PATENT-OFFICE.
 The decisions of the commissioner of patents, though entitled to great weight upon questions of priority, are not conclusive.

In Equity.

*Browne, Holmes & Browne,* for complainant.

*James E. Maynodier,* for defendant.

NELSON, J. The original of the plaintiff's patent was granted to John S. Rogers, August 24, 1875, No. 167,123, for a new and useful process of extracting gelatine or ichthyocolla from salted fish-skins. It was reissued June 1, 1880, No. 9,226, and again reissued July 13, 1880, No. 9,296. The invention has proved of great value commercially, and it has certainly the merit of patentability. It is also new, unless it was anticipated by Isaac Stanwood, to whom a patent was granted for the same process, May 23, 1876, No. 177,764, and reissued May 17, 1881, No. 9,715. The specifications and claims of both the original and reissued patents of Rogers are the same in substance, the difference between them in phraseology being slight and immaterial. In the second reissue he states the process to be this:

"My invention is to utilize such salted skins of fish; and in carrying it out the first portion of it is to desalt the skins, such portion of the process causing the removal of the scales from the skins, it being accomplished by soaking the skins in cool water, and agitating them therein sufficiently to extract the salt from them. The water should be changed repeatedly until the salt may have been separated from the skins, after which they are to be put into fresh water, which should be gradually heated to a boiling temperature, and kept so for three hours, more or less, until the gelatine may have been sufficiently extracted from the skins by the water so heated. Next, the superfluous matter or matters should be removed from the gelatinous solution now procured, and it (the gelatinous solution) should be strained or filtered in order to obtain it in a purified state. Finally, the liquid is to be suitably evaporated by introducing the solution into pans or moulds, or upon slabs, and exposing to the atmosphere until it may be sufficiently condensed for use, whether as an article of food or as a glue for mechanical purposes."

His claim is:

"The process, substantially as described, of obtaining gelatine from salted fish-skins, it consisting in desalting and boiling them, separating from the gelatinous solution so obtained the superfluous matter or matters, and reducing it (the solution) by evaporation to the necessary consistency for use, as set forth."

The evidence shows that in the years 1872 and 1873 an extensive business was carried on in Gloucester, in the preparation of what is

termed dessicated or boneless salt fish. The process of the manufacture consisted in stripping off the skins and removing the bones from the salted fish, and then cutting the flesh into suitable pieces and packing it in boxes for the market. One result was the accumulation of great quantities of the skins, then thought to be of no value for any purpose, which the fish dealers found considerable difficulty in getting rid of. In November, 1873, Rogers first conceived the idea of utilizing this waste substance as material for the manufacture of gelatine or glue, and began his experiments at Gloucester. In the following autumn he had so far succeeded as to be able to place upon the market samples of liquid glue extracted from salted fish-skins. On February 27, 1875, he filed his application for a patent. Stanwood, who was a manufacturer of glue from fish sounds, in Gloucester, begun his experiments in the autumn of 1872, or the following winter, and by soaking and boiling the skins, and then drying the solution, succeeded in obtaining a liquid glue in small quantities. But the glue proving to be of inferior quality, and his customers finding fault with it, he abandoned his attempts and did not resume them until 1876, after Rogers had obtained his patent. The evidence is conflicting on this point, but upon the whole it is satisfactorily proved that everything done by Stanwood prior to the Rogers patent was merely experimental, and that his experiments, such as they were, did not reach the perfected process of Rogers. Experienced as he was in the manufacture of fish glue, he must have appreciated the importance of a new method by which this waste material could be made available as glue stock in his business. The presumption is very strong that if he had actually succeeded in discovering such a method, he would have made more use of the discovery than he is shown to have done.

When Stanwood applied for his reissue patent an interference was declared between his application and Rogers' original patent. The interference was contested by the parties, and the decision of the patent office was in favor of Stanwood. The defendants rely in their answer upon this decision as a final adjudication settling the question of priority in favor of the Stanwood patent. But it is well settled that the decisions of the commissioner of patents though entitled to great weight on questions of priority, are not final, even between those who have been fully heard in the interference. *Union Paper Bag Mach. Co.* v. *Crane,* 1 Holmes, 429; *Whipple* v. *Miner,* 23 O. G. 2236; [S. C. 15 FED. REP. 117.]

The process used by the defendants in the manufacture of glue is identical with that of the Rogers patent, and infringes it.

Decree for complainants.