## COVERT v. COVERT.

(Circuit Court, W. D. New York. January 14, 1901.)

1. PATENTS—PRIOR USE—EVIDENCE TO ESTABLISH.
   Prior use to defeat a patent must be established beyond a reasonable doubt, but clear and satisfactory proof that a single one of the articles covered by the patent, which is produced in court and identified, was left by the inventor at a store to be sold, more than two years before his application for the patent, is sufficient.

2. SAME—WAGON JACK.
   The Emons patent, No. 463,599, for a wagon jack, *held* void, on the ground that the article covered thereby was invented and placed on sale by the inventor more than two years before the application.

In Equity.   Suit for infringement of patent.   On final hearing.

Charles G. Coe, for complainant.

Charles A. Hawley, for respondent.

HAZEL, District Judge.   The complainant acquired ownership, by assignment, of letters patent No. 463,599, granted November 17, 1891, to Charles Emons "for a wagon jack." The application was filed August 19, 1890. The defendant is owner of letters patent No. 432,230, dated July 15, 1890, No. 457,183, dated August 4, 1891, and No. 558,589, dated April 21, 1896. The patent of July 15, 1890, was involved in interference before the application for the complainant's patent. The interference was determined in favor of Charles Emons, complainant's assignor, a priority of invention was awarded to the interferant, and the patent in suit was thereafter issued to said Emons. The defendant's first application was filed May 23, 1890. The defendant by his answer denies infringement, and alleges anticipation, prior use, and abandonment. Both patents are for a wagon jack, comprising a base plate and hollow standard, the vertical moving bar therein carrying the stepped head, the lever of the fulcrum bar pivotally bearing on the base plate. The only difference, so far as the wagon jack in question is concerned, is that in defendant's constructions, instead of having a solid base plate, they have base plates formed with arched ribs, and their standard does not project centrally from the base plate; the fulcrum rod is not pivoted on the lug projecting from the base plate; but in one of the patents one of the ribs of the base, and in the other the rod, is not pivoted at all, but hooked to the base, and has an additional L-shaped step to its head. In defendant's first patent the fulcrum bar is supported at its center. The slight structural differences in these patents, readily observable from an inspection of the jacks, would not avoid infringement, were the patent allowed to stand unimpeached for any other cause.

The second question presented is whether the Emons patent is anticipated by many prior inventions shown by patents in evidence. An examination of the anticipatory patents shows nothing sufficient to overcome the presumption which arises in favor of the inventor by the issuance to him of the patent by the patent office and the decision in the interference proceedings. The principal controversy relates, therefore, to the third defense of prior use and abandonment. In his proofs the defendant relies mainly on the latter defense. It is claimed that the wagon jack for which the patent in suit was granted had been on sale and in use for more than two years before the filing of the application for the patent therefor, and that his alleged invention had been abandoned by him to the use of the public before his application for letters patent was made. It is settled that prior public use or sale is a question of fact which may be established by a single witness, and if by his testimony a single sale is satisfactorily proven, or the article patented was in public use earlier than two years before the application for that patent, judgment must be rendered for the defendant. The reason for this rule is obvious. Whenever an inventor by his efforts, with the expenditure of his time

and means, by his application to introduce an invention to the public, not having been known or used previous to such invention, does devise and create something new and useful, the law jealously guards the rights and interests of the inventor, and protects him and his patent, in his legal rights, from the attacks, jealousies, and suspicions of rival inventors and manufacturers. Defenses interposed in an action for infringement of the rights guarantied by the issuance of a patent by the government ought to be carefully scrutinized and considered. The defense of prior use and abandonment of a patent, although easily pleaded in answer to complaint for infringement, must yet be established by preponderating proof, clear, satisfactory, and beyond reasonable doubt. Cluett v. Claflin (C. C.) 30 Fed. 922; Mack v. Manufacturing Co. (C. C.) 52 Fed. 821; Washburn v. Gould, 3 Story, 122, Fed. Cas. No. 17,214; Waterman v. Thompson, 2 Fish. Pat. Cas. 461, Fed. Cas. No. 17,260; Barbed-Wire Patent Case, 143 U. S. 284, 12 Sup. Ct. 443, 36 L. Ed. 154; Coffin v. Ogden, 8 Wall. 120, 21 L. Ed. 821; Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017. If, however, the testimony in the case is satisfactory,—that is to say, if it clearly establishes beyond a reasonable doubt that the inventor is unmindful or regardless of the protection which the laws accord him in recognition of his inventive genius, his public services,—and if, therefore, before the invention ripens into a patent, he, of his own volition, relinquishes his exclusive right to the protection which the law affords him, he thereby waives control over his invention or discovery. The public by right takes to itself the benefit which the neglectful inventor has the right to restrict to such use only as would remunerate him for the time and service which he gave—the endeavor and energy which he displayed—"in the finding out or creating something new and useful which did not exist before by the operation of the intellect." Whether the inventor intended to abandon his invention by public use must be ascertained from the particular facts and circumstances of each case. The inventor's own direct act is most significant of his intention. The esteem in which he holds his invention or discovery is ascertained by his conduct towards the thing invented. If he regards his invention as useful, and one for which remuneration by right ought to inure to him, he promptly applies for protection for his invention by complying with the requirements of law. It is demanded of him that, in consideration of the right to patent extended to him by the government, he comply with the prevailing laws enacted, not only for his safety, but for the benefit of the public. It is well said in Wright v. Postel (C. C.) 44 Fed. 352, that "one who desires a patent must be vigilant in reducing his invention to practical form and applying for letters. The patent laws are intended for the benefit of the public as well as of patentees. They are designed to stimulate invention, for the common advantage. It is therefore the duty of inventors to use reasonable diligence in reducing their conceptions to practice, and applying for patents, when desired. They cannot neglect it without danger to their rights." The burden of proof in this case rests upon the defendant to establish prior sale, public use, and abandonment. It is necessary for him to show that complainant's invention was unmistakably

dedicated to the use of the public by the inventor, or with his consent or acquiescence, prior to August 19, 1888.

What are the salient facts of this case with reference to public use and sale for more than two years before application was made for the letters patent in suit? The inventor testified that he conceived his invention on or about August 1, 1888, and that on August 25th thereafter he completed the wagon jack described in the patent issued to him on his application for a patent dated August 19, 1890. At the time the jack was completed he was in the employ of Reynolds & Lang. He showed the completed jack to three fellow employés, none of whom gave testimony, although two of them were alive at time of trial. On the following day, Emons, the inventor, exhibited the completed jack to one Porter, who afterwards became his father-in-law. Acting on his suggestion, he made a brief memorandum on the last ruled page of a memorandum book, declaring that on August 25, 1888, his three fellow workmen saw an iron wagon jack invented by Charles Emons. This declaration was signed by his fellow employés, to whom the wagon jack had been exhibited on the preceding day. The memorandum book also contains an entry for material used in making other jacks, under date of August 28, 29, and September 1, 1888. These entries in his pass book are in evidence to corroborate the testimony of the inventor that the invention was completed at no earlier or other time than August 25, 1888, and therefore, it is claimed, public use or sale of the wagon jack after August 25, 1888, was not more than two years before his application for patent was filed with the commissioner of patents. These entries, made in a memorandum book, are no additional proof sustaining the evidence that the jacks embodying the invention were first made and completed in the latter part of August, 1888, nor can it in any sense be regarded as corroborative of Emon's testimony as to the time when the first and original jack was completed. The declaration signed by his fellow employés is declarative merely of the fact that on the day therein named they saw an iron wagon jack invented by Charles Emons. It is not claimed by them that it was the first and original jack, nor have we the benefit of the testimony of any of these men to enlighten us further in that respect. No evidence was given by the defendant on the matter of interference. The decision on the question of invention and priority of patents was in favor of the inventor, and it is entitled to great weight and careful consideration. It is not final, but raises a presumption against the defeated party. Machine Co. v. Stevenson (C. C.) 11 Fed. 155; Glue Co. v. Brooks (C. C.) 19 Fed. 426; Machine Co. v. Crane, 1 Holmes, 429, Fed. Cas. No. 14,388; Whipple v. Miner (C. C.) 15 Fed. 117. Although the burden of proof of prior use properly rests upon the defendant, when that proof is clear, convincing, unimpeached, when all reasonable doubt is removed, however drastic be the punishment, yet if the defendant is able to overcome the presumption against him, if notwithstanding the burden of proof assumed by him he clearly and satisfactorily establishes prior use by other means generally, either with or without compensation, or if the invention is, with his consent, put on sale for such use, then it will be in public use and on public sale, within

the meaning of the law, and whoever subsequently receives the patent for the same invention is entitled to that protection of the law which was paramount in the inventor. See Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000; Andrews v. Hovey, 123 U. S. 267, 8 Sup. Ct. 101, 31 L. Ed. 160; Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68; Manufacturing Co. v. Rathbone (C. C.) 26 Fed. 262.

Within the rule thus established, has the defendant satisfied the court that the defense of prior public use and sale is made out? The crucial test is, do the proofs satisfactorily show that the wagon jack was invented prior to August 19, 1888, and, if so, was it, anterior to that time, abandoned to the public. The defendant lived in the same village with the inventor. He saw the wagon jack, and, after making a slight alteration, filed his application for patent on May 23, 1890, more than two years, as the defendant claims, after complainant's jack or invention was known, and more than two years after it had been put on sale. It appears that in May or June, 1888, the father of the inventor brought to the farm of Ellsworth Tunison some jacks for the purpose of using a drill to do drilling upon them. He left with the witness Tunison a completed jack in May or June, 1888. The witness kept it, and used it for a year or two. The jack is produced and identified. At the time the jack was left with him the witness lived on the Booram Farm. He and others used the jack during the year 1888. He moved away from the Booram Farm in the spring of 1889. Alton J. Booram testified that Tunison lived on the Booram Farm, and that he moved away in the spring of 1889; thus fixing the year 1888, it is argued, in which Tunison, in May or June, procured the red jack which is in evidence. Louis H. Wilson testified that he purchased one of these wagon jacks of the father of the inventor in the fall of 1888. Prior to that he had seen them in process of manufacture at the house of the father of the patentee in the summer of 1888, and he saw parts of the jack which were not put together not later than May or June, 1888, and these parts had been drilled and were ready to put together prior to his seeing them. It appears by the testimony of Frank C. Case that on June 27, 1888, he sold his hardware business to his brother, C. Fred Case, and the date of that sale is corroborated by the production of the daybook used by Frank C. Case, and which C. Fred Case continued to use after his purchase of the business. He began its use with his name, and the date of the commencement of his business, as of June 27, 1888, and the entries in his daybook from then on continued to the last page thereof, August, 1890, and the entries were made in the due and current course of business. He testified that in the stock which he received from his brother was an iron wagon jack, —one of Emon's,—and that his recollection is that it had been there a year or so before; that before the purchase by him of the business he had been a clerk in the employ of his brother for the period of three years. He is positive that the wagon jack was in the store on June 27, 1888, when he purchased the stock, and to the best of his recollection it was left there by the inventor and his father-in-law. The jack was sold to John Golbraith on March 15, 1899. The sale was charged to him on that day. The page of the daybook is in evidence,

so that it may be seen that the entry was made in due course of business. The proceeds of the sale were credited, in accordance with directions given when the jack was left for sale, to one Frank Foster, as appears upon the exhibit, and these entries were duly posted in the ledger accounts of the respective parties. The jack was painted black, and is produced in evidence and identified by the son-in-law of the purchaser, who was with the purchaser when it was purchased. The entries in the books of the hardware store were made by the book-keeper, who testified that he made the entries of sale and credit of the proceeds to Frank Foster, and that it was made in the ordinary course of business, and in the discharge of his duties as clerk for the witness Case. By the testimony of Frank C. Case, it appears that he sold out his business to his brother in June, 1888, and that the wagon jack was left with him for sale; that it was placed in his stock of goods and exposed for sale; it was left there from six months to a year prior to the time when he sold out to his brother, C. Fred Case. He went to California in February, 1888, and he is positive that the wagon jack was in his store exposed for sale before that. It appears from the testimony of Fred Rappelje that he saw complainant's wagon jack, or one like it, in the store of Frank C. Case prior to the sale of the store to C. Fred Case; that "it was before he sold out, but after February 1st of the year of the sale." Two of these witnesses are fortified by a date which is unimpeachable, and from their evidence it appears that the complainant's jack was on sale, publicly seen and inspected by a number of persons, for months before the time when the inventor says he conceived his invention. True, the proof of the delivery of the jack for sale when it was left at the Case store is a narrative of events occurring 10 or 11 years previously, and, if it stood alone, might very properly be classed as testimony depending solely upon the unaided memory of the witness, and therefore considered vague, indefinite, and uncertain. But the narrative of facts in reference to the jack left at the store for sale, and in reference to the jack left with the witness Tunison in May or June, 1888, is accentuated in the one case by the sale of a store to another,—a transaction of positive date,—and in the other by corroborative testimony of the time when Tunison moved away from the Booram Farm. All of this evidence not alone emphasizes, but also harmonizes, with the statements of the witnesses Wilson and Rappelje. The inventor in his rebuttal examination simply contents himself with the statement that he could not have left a jack for sale at the Case store before August 25, 1888, because prior to that date the jack had no existence. No other explanation is offered as to the sale of the jack, or as to its being left at the Case store for sale.

The offer to sell the wagon jack more than two years before filing application is enough. Actual sale is not necessary. Plimpton v. Winslow (C. C.) 14 Fed. 919; Henry v. Soapstone Co. (C. C.) 2 Fed. 78. It is not claimed that the sale of the wagon jack, as proved, was intended to be an experimental sale, or that its use by others was for the purpose of testing its salability. In Henry v. Soapstone Co., supra, the court said: "A single conditional sale of the invention, more than two years before the application, works a forfeiture of the

patent;" and, "the courts very properly limit the meaning of public use to use in the ordinary way, and they may limit the word 'sale.'"

It seems to be clearly established that the proofs, and the inferences drawn therefrom, are sufficient to carry the date of invention back to a period of time anterior to June 27, 1888, nearly two months earlier than the time of invention claimed by the complainant. It follows, therefore, and it is shown by fair preponderance of proof and beyond reasonable doubt, that the patentee in suit has by his own acts dedicated his invention to the use of the public more than two years before the filing of the application for a patent, thereby surrendering his right to the patent in suit. The complaint is dismissed.