# MARYLAND STEEL COMPANY OF BALTIMORE COUNTY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 104.    Argued December 8, 1914.—Decided January 5, 1915.

Although parties to a contract may agree that time is of the essence and may stipulate for liquidated damages, they may subsequently so modify the requirements as to completion that performance within the stipulated time becomes unimportant. *Flynn* v. *Des Moines Railway*, 63 Iowa, 490, approved.

As the record in this case does not show that there was any culpable delinquency in completion of a contract for the building of a vessel, or any detriment to the Government, but that the vessel was delivered, tested, approved and paid for without protest on the part of the Government on account of delay, and, as it does appear, the Quartermaster General had, in his discretion, orally waived the time limit in the contract, *held,* that:

In a case of contract authorized by law necessarily entered into and conducted by officers of the Government, they must necessarily have the power to make it effective in its progress as well as in its beginning; and the oral agreement of the Quartermaster General was within the scope of his official authority and amounted to a modification of the contract. *Salomon* v. *United States*, 19 Wall. 17, followed. *United States* v. *Bethlehem Steel Co.*, 205 U. S. 105, distinguished.

48 Ct. Cls. 50, reversed.

THE facts, which involve the right of the Government to deduct from final payment on a contract an amount

alleged to be due as liquidated damages for non-completion on a former contract with the claimant, and also the question of whether such liquidated damages had been waived by the Government, are stated in the opinion.

*Mr. Walter D. Davidge,* with whom *Mr. Alexander Preston* was on the brief, for appellant:

Within the time limited for the completion and delivery of the steamer under the first contract the Government waived the time limit. *Salomon* v. *United States,* 19 Wall. 17; *Ford* v. *United States,* 17 Ct. Cl. 60; *District of Columbia* v. *Camden Iron Works,* 181 U. S. 453; *Phillips Const. Co.* v. *Seymour,* 91 U. S. 646; *Williams* v. *Bank,* 2 Pet. 96; *Ittner* v. *United States,* 43 Ct. Cl. 336.

The waiver of the time limit in the first contract necessarily tolls the provision in that contract for liquidated damages. *Kemp* v. *Rose,* 1 Giff. 258; *Dodd* v. *Churton,* 1 Q. B. 562; Wait's Engineering Jurisprudence, § 726, p. 667; *Flynn* v. *Des Moines R. R.,* 63 Iowa, 491; *Phillips* v. *Seymour,* 91 U. S. 646; *Mosler Safe Co.* v. *Maiden Lane S. D. Co.,* 199 N. Y. 479, 489.

Aside from the express waiver of the time limit by the Quartermaster General, the fact of payment in full of the entire balance due under the first contract was an accord and satisfaction and conclusive on the Government and a waiver of any claims against the claimant under that contract. *United States* v. *Corliss Steam Engine Co.,* 10 Ct. Cl. 494; *S. C.,* 91 U. S. 321; *Shipman* v. *United States,* 18 Ct. Cl. 138; 1 Hudson on Building Contracts, 538; Wait, *supra,* § 325.

The payment of the entire contract price under the first contract, without any deduction, was deliberate and under no mistake. Cases *supra* and *Griffith* v. *United States,* 22 Ct. Cl. 165; *Barnes* v. *District of Columbia,* 22 Ct. Cl. 366, 394.

There was no loss or damage suffered by the Govern-

ment in completing and delivering the steamer under the first contract.

*United States* v. *Bethlehem Steel Co.,* 205 U. S. 105; *Sun Printing Ass'n* v. *Moore,* 183 U. S. 642, do not apply to this case.

*Mr. Assistant Attorney General Thompson* for the United States:

Where the contract provides for the payment of liquidated damages the same become chargeable without a showing of actual damage suffered. *United States* v. *Bethlehem Steel Co.,* 205 U. S. 105, 119.

The waiver of the stipulated time limit for the performance of the contract did not destroy the right to liquidated damages. *Phillips* v. *Seymour,* 91 U. S. 646, 651; *McGowan* v. *Am. Pressed Bark Co.,* 121 U. S. 575, 600. See also *Graveson* v. *Tobey,* 75 Illinois, 450; *United States* v. *McMullen,* 222 U. S. 460, 468; *Nibbe* v. *Brauhn,* 24 Illinois, 268; *Redlands Association* v. *Gorman,* 161 Missouri, 203; *Fisk* v. *Tank,* 12 Wisconsin, 306; *Jeffrey Mfg. Co.* v. *Central Coal Co.,* 93 Fed. Rep. 408, 412; *Wisconsin Cent. R. R.* v. *United States,* 164 U. S. 190, 212; *Logan Co.* v. *United States,* 169 U. S. 259; *United States* v. *Saunders,* 79 Fed. Rep. 408; *United States* v. *Utz,* 80 Fed. Rep. 852.

MR. JUSTICE McKENNA delivered the opinion of the court.

Petition in the Court of Claims for judgment for the sum of $4,750.00, balance due upon a contract entered into between petitioner in such court, appellant here, and the United States for the construction of a steel hull twin-screw suction dredge and for installing therein the propelling and other machinery.

There was and is no controversy as to the performance

of the contract or as to the amount due upon it.    The
Government set up as an offset an amount alleged to
have been illegally paid on a prior contract between ap-
pellant and the Government, which contract, according
to the findings of the Court of Claims, (all the facts which
we state being the findings of the Court of Claims) was
entered into between appellant and the Government on
June 24, 1903, for the construction and equipment of a
single screw steamer for harbor service of the Quarter-
master's Department and submarine cable service, ac-
cording to certain specifications which were made part of
the contract, for a consideration of $88,000.00, to be paid
in various amounts as the work progressed, less 10% to
be withheld to make good any defects, the vessel to be
completed within one hundred and forty days, exclusive
of Sundays and legal holidays, or by December 9, 1903.

It was provided that if appellant should "fail to com-
plete and deliver the steamer within the stipulated time
it should pay to the United States the sum of $50.00 per
day as liquidated damages for each and every day so
delayed, exclusive of Sundays and legal holidays, which
amount, it was provided, might be withheld from any
money due" appellant under the contract.[1]

---

[1] "That the Maryland Steel Company shall complete the construc-
tion and equipment of the said steamer and deliver same to the party
of the first part in New York Harbor, or as directed by him, in one
hundred and forty (140) days, exclusive of Sundays and legal holidays,
from the date of this contract.   And it is hereby agreed that in case the
party of the second part fails to complete in all respects and deliver the
said steamer within the time herein specified, the loss resulting to the
United States from such failure is hereby fixed at the rate of fifty ($50)
dollars per day for each and every day, exclusive of Sundays and legal
holidays, completion and delivery of the vessel is delayed beyond the
period hereinbefore specified, and it is hereby stipulated that the party
of the first part may withhold such amount as liquidated damages
from any money due and payable to the party of the second part by
the United States for work done under this contract.   In the event of

On December 1, 1903, before the time stipulated for completion had expired, at the request of appellant, owing to unavoidable delays in procuring the necessary material, the Quartermaster General of the Army, within his discretion under the contract, orally waived the time limit in the contract, and subsequently, on April 2, 1904, confirmed the waiver by letter.

On April 1, 1904, or ninety-five days, exclusive of Sundays and holidays, after the time fixed in the contract, the Quartermaster General directed the depot quartermaster at New York to make final payment for the steamer, retaining, however, the 10% to make good any defects there might be in the material and workmanship. On July 13, 1904, the entire sum stipulated to be paid by the Government was paid without any deduction whatever.

It does not appear that appellant unreasonably delayed the work after the waiver of the time limit, or that the Government suffered any actual pecuniary loss or damage by reason of the delay in the completion and delivery of the steamer.

The court found the facts as to the other contract as set out in the petition of appellant and that appellant was paid the stipulated price therefor, less the sum of $4,750, "which [we quote from the findings, 48 Ct. Cls., p. 53] the defendants (the United States) claim was the amount arising as liquidated damages for the ninety-five days' delay of the claimant (appellant here) in the completion of the steamer under the first contract hereinbefore referred to and which amount the defendants further claim was inadvertently and under mistake of fact paid to the claimant company" (appellant). And the court recites

---

the act of God, war, fire, or strikes and lockouts of workmen affecting the working of this contract, the date of completion of the steamer may be extended for such period as may be deemed just and reasonable by the party of the first part, to cover the time lost from any of the above mentioned causes."

that the Government set up by way of counterclaim the amount so paid and that the Government claimed such sum was due as liquidated damages for the ninety-five days' delay of the claimant (appellant) in the execution of the first contract and claimed further that such sum was "inadvertently, improperly and illegally paid by the officers of the Government." The record shows that the counterclaim was filed February 15, 1912.

From the findings of fact the court decided "as a conclusion of law that the petition be dismissed." And this as a consequence of sustaining the counterclaim of the Government, the court deciding that a waiver of the time limit "did not embrace and release from the payment of the agreed damages, which were assessable upon its (appellant's) default." The court said (48 Ct. Cls., p. 60), "Under such circumstances an officer, in the absence of some provision of law or contract therefor, would have no authority to release a contractor from the provision for liquidated damages so arising." This appeal was then taken.

Appellant attacks the conclusion of the court and contends that "the waiver of the time limit in the first contract necessarily tolled the provision in that contract for liquidated damages." The Government, on the other hand, maintains "that the waiver of the time limit simply estopped the Government from annulling the contract, but that this in no way affected the other terms of the contract." It is the effect of the contention of the Government, curious certainly at first impression if we consider the intention of the parties, that the time limit was waived but its sanction was retained, and what seemed to be concession to a delay which was without fault (so found by the Court of Claims) carried with it the full rigor of the bond.

It may be that the Government would have had the right to annul the contract upon the default of appellant

and avail itself of resultant remedies. It did not do so, but preferred to retain the contract and extend the time of its execution; and, we may assume, upon a consideration of the circumstances—as much in view of the Government's interest as appellant's interest, the Government suffering no damage by the delay, but getting the instrumentality for which it had contracted in time for its purpose, sooner, indeed, it may be, than if it had annulled the contract with appellant and re-let the work to another. These were considerations which the Quartermaster General, in the Government's interest, might well entertain. And it may have seemed to that officer that it would have been as harsh as it would have been useless to sacrifice what had been already done, and faithfully done, by annulling the contract or by refusing to excuse the delay in final performance which was without fault. The case should be judged by that consideration and conduct. But the Government insists that these seemingly natural suppositions cannot be indulged and urges against them the principle of building contracts that if the builder has failed to complete the whole or any specific part of the building or structure within the time limited by his covenant, the other party has the option of abandoning the contract for such failure or of permitting the party in default to go on. If he chooses the latter course he so far waives absolute performance as to be liable on his covenant for the contract price of the work when completed. For the injury done him through the broken covenant he may sue, or, if he waits to be sued, he may recoup the damages thus sustained in reduction of the sum due upon the contract for the completed work. *Phillips* v. *Seymour*, 91 U. S. 646, and *United States* v. *Bethlehem Steel Company*, 205 U. S. 105, are cited. Cases are also cited which declare the same principle in regard to contracts for the sale and delivery of goods where time is of the essence of the contract. The latter cases were cases of actual damages, and so also was

*Phillips* v. *Seymour,* where, there being no legal evidence of actual damage, it was decided none could be recovered.

It may be said that a provision for liquidated damages is a declaration by the parties of the fact of damage from delay in the performance of the work contracted for and the measure of its amount, it not being susceptible of exact ascertainment. *United States* v. *Bethlehem Steel Company, supra,* is adduced for the application of the proposition to the case at bar. The contract in that case was entered into when war was imminent with Spain and was for the delivery of gun carriages. It contained a clause for a deduction, in the discretion of the Chief of Ordnance, of $35.00 per day from the price to be paid for each day of delay in the delivery of each carriage. The clause was held, considering the circumstances, to be not a penalty but a provision for liquidated damages and that it was competent for the parties to the contract to provide the latter, and, having so provided, recovery might be had "for the amount stated as liquidated damages upon the violation of the contract and without proof of the damages actually sustained." It will be observed, therefore, that a condition of recovery was proof of violation of the contract. The condition does not exist in the case at bar. The contract was not violated. The time for its performance was extended and, we may observe, before any default had occurred. In that case there was no waiver of the time limit; in the case at bar there was an express waiver. That case, therefore, fails in its asserted analogy. Undoubtedly parties may agree that time shall be of the essence of their contract and, the proper legal conditions existing, may stipulate for damages and the measure of them, but they may subsequently change their views and requirements and consider that performance within the stipulated time is unimportant.

*Flynn* v. *Des Moines Ry.,* 63 Iowa, 490, is directly in point. The plaintiff in the case entered into a contract

with the railroad to construct part of its line.  Payments for the work were to be made monthly upon the certificate of the engineer of the company, and it was covenanted that 10% from the value of the work as an agreed compensation for damages should be retained by the company in case of failure by Flynn to complete the whole amount of the work according to the stipulations of the agreement. It was contended by the railway company that it was entitled to retain the 10% as liquidated damages.  The court found that the stipulation as to time was waived and by being waived was eliminated from the contract and the railway company was not entitled to any sum as liquidated damages.

In the present case, as we have seen from the findings, there was no thought by the officers of the Government of a culpable delinquency on the part of the appellant or of detriment to the Government.  The steamer was delivered, tested, approved and paid for.

It was held, however, by the Court of Claims that the Quartermaster General had no power to waive the provision for liquidated damages.  It is not clear that counsel contends for so broad a proposition.  His contention is that "the Government is not bound by the acts of its officers in making unauthorized payments through mistake of fact or of law."  There was no mistake of fact, and by mistake of law counsel may mean, the action of the Quartermaster General was outside of the scope of the official authority given him by law.  If that officer so acted the Government is not bound by his acts.  *Wisconsin Central R. R.* v. *United States,* 164 U. S. 190, 212, and *Logan* v. *United States,* 169 U. S. 255, 259.

The cited cases (they are those upon which the Government relies) involved the construction of statutory law, in other words, of a specific law which was the source of the officer's authority.  The case at bar is a case of contract, authorized by law, necessarily entered into and

conducted by the officers of the Government and as necessarily they must have had the powers to make it effective in its beginning and progress. The Court of Claims recognized this and found that (48 Ct. Cls., p. 52) "the Quartermaster General, United States Army, within his discretion under the contract, orally waived the time limit in said contract,"—a very essential discretion which might have been embarrassed or defeated if it had not extended to what depended upon the time limit of the contract. We think the case, therefore, falls under the ruling of *Salomon* v. *United States*, 19 Wall. 17, 19–20, where it is said that "The Act of 1862 (12 Stat. 411), requiring contracts for military supplies to be in writing, is not infringed by the proper officer having charge of such matter, accepting delivery of such supplies after the day stipulated, nor is a verbal agreement to extend the time of performance invalid." See also *District of Columbia* v. *Camden Iron Works*, 181 U. S. 453.

> *Judgment reversed and cause remanded with direction to dismiss the counter petition of the Government and to enter judgment for appellant in the amount claimed by it.*

Mr. Justice McReynolds took no part in the consideration and decision of the case.