Campbell, Chief Justice,
delivered the opinion of the court:
This case comes before us upon the defendants’ motion for a new trial. The plaintiff sued for $4,323.51 which had been deducted from the contract price by the defendants after completion of the work contracted for, said sum being composed of two items:
Liquidated damages, 142 days, at $25 per day____________$3, 550. 00
Cost of inspection for same period______________________ 773. 51
The contract price was $15,000, and the defendants had paid the plaintiff that amount less said deductions.
The plaintiff’s attorney, among other contentions, insisted that the contract provided for a penalty and not liquidated damages. The court held that the defendants were entitled to retain the amount stipulated as liquidated damages, but that they should not retain the amount deducted as “ cost of inspection,” and gave judgment accordingly.
The defendants assail, upon this motion, the correctness of that conclusion, and contend that both sums were properly deductible under the terms of the contract.
In view of these contentions, we deem it proper to state more at length the facts and the reasons for our former conclusion, to which we adhere.
The Government desired the removal of the wreck of a steamship which had sunk in a main channel of the Boston Harbor and formed an obstruction to and interfered with navigation. Bids for the work were asked for and specifications defining the work and the contractor’s duties and containing a number of provisions for the guidance of bidders were furnished. It was provided in section 4 of these specifications that “parties making bids are to be understood as accepting the terms and conditions contained in such form of contract [referred to earlier in said section], which will provide for liquidated damages in an amount of twenty-five dollars ($25) per day for any period of delay beyond the time agreed upon for completion.”
*72 Section 17 provides that “ an inspector or inspectors, paid by the United States, will be employed under the direction of the engineer,” and also provides that if the contractor provide board and lodging for his own employees he should, at the engineer’s request, furnish at the same locality “ as good board and lodging to the inspectors and boatmen” employed by the Government, at a rate not exceeding $20 per month, to be paid by the United States.
Section 22 provides that in case the work did not progress at an average rate which would insure its completion (except for causes stated in the proviso to section 5 of the contract) the engineer could take measures necessary to insure its completion by June 80, 1908; and it is added: “ This provision, however, shall not be construed to affect the right of the United States to annul the contract or to enforce the stipulation in paragraph 4 providing for liquidated damages in an amount of twenty-five dollars ($25) per day for any period of delay beyond the time agreed upon for completion, as provided for in the form of contract to be entered into.” It is to be noticed that there is no reference here to “costs of inspection,” the saving clause being confined to liquidated damages.
Section 14 provides that the work should be completed on or before June 30, 1908.
After the plaintiff was awarded the work a contract was executed which expressly makes the specifications a part of it.
To determine whether the contract provided for liquidated damages we should keep in view the general significance of the terms.
It is competent for parties entering upon an agreement to avoid all future questions as to the amount of damages which may result from the violation of the contract and to agree upon a definite sum as that which shall be paid to the party who alleges and establishes the violation of the agreement. In this case the damages so fixed are termed liquidated, stipulated, or stated damages. Sedg. Meas. Dam,., 7th ed., 212.
A contract for liquidated damages is a contract by which the parties in advance of breach fix the amount of damages *73 which will result therefrom and agree upon its payment. 2 Page on Gontr., 1793.
“A claim is liquidated only when the amount of it has been determined or the data settled upon which the amount can be calculated.” Charnley v. Sibley, 73 Fed. R., 980, 982.
In Beale v. Hayes, 5 Sanf., N. Y. Super. Ct., 643, it is said:
“ If the sum mentioned in the agreement must be regarded as liquidated damages in the proper sense of the term, as distinguished from a penalty, the plaintiff will be entitled to recover the whole sum without any other proof than that of the breach which he has assigned, but to that sum his recovery will be limited. He will not be allowed to give evidence of an actual loss to a larger amount. Liquidated damages, when a breach is proved to which they apply, are a positive debt, and as such they exclude on both sides the consideration and the proof of actual damages.”
In Bagley v. Peddie, 16 N. Y., 469, 471, cited in Sun Printing Association case, 183 U. S., 642, 671, it is declared that where the damages are liquidated, “evidence aliunde the instrument declared on can not be received respecting the amount of the damages.” Other cases holding that where the damages are liquidated it is unnecessary to adduce evidence to prove the damages are Stanley v. Montgomery, 102 Ind., 102; Sanford v. First National Bank, 94 Iowa, 680; Kelso v. Reid, 145 Pa. St., 606.
In Maryland Steel Co. case, 235 U. S., 451, 458, is this language:
“ It may be said that a provision for liquidated damages is a declaration by the parties of the fact of damage from delay in the performance of the work contracted for and the measure of its amount, it not being susceptible of exact ascertainment.”
A question which has frequently engaged the attention of courts is as to whether a particular stipulation in a contract is to be construed as a penalty or as a liquidation of the amount of the recoverable damages, and they are generally agreed that the mere designation of the stipulation as a penalty or as liquidated damages will not necessarily determine its real character. On this subject, referring to a contract *74 then under consideration, it is said in United States v. Bethlehem Steel Co., 205 U. S., 105, 119:
“ This contract might be considered as being one of that class where a doubt might be claimed, if nothing but the contract were examined. The courts at one time seemed to be quite strong in their views and would scarcely admit that there ever was a valid contract providing for liquidated damages. Their tendency was to construe the language as a penalty, so that nothing but the actual damages sustained by the party aggrieved could be recovered. Subsequently the courts became more tolerant of such provisions, and have now become strongly inclined to allow parties to make their own contracts, and to carry out their intentions, even when it would result in the recovery of an amount stated as liquidated damages, upon proof of the violation of the contract, and without proof of the damages actually sustained. This whole subject is reviewed in Sun Printing & Publishing Association v. Moore, 183 U. S., 642, 669, where a large number of authorities upon this subject are referred to.”
The specifications which were furnished to the plaintiff afforded the basis upon which he could and did bid for the work. We have shown by reference to them the provisions bearing on the subject of liquidating the damages, and it would be difficult to deduce from these provisions any other idea than that they contemplated a liquidation in advance of the amount of the recoverable damages. If there could be any doubt upon this question when considering the specifications alone, that doubt is resolved by evidence adduced by defendants apparently for the purpose of making clear the fact. They proved by the chief clerk in the engineer’s office, who had immediate charge of the negotiations with plaintiff relative to the work, that when these negotiations were drawing to a close, and it had about been decided to award the work to plaintiff, he called plaintiff’s attention to the clause in the specifications stating that the contract would provide for $25 a day liquidated damages for each day of delay, and that plaintiff replied he had made allowance for that in fixing his contract price.
In United States v. Bethlehem Steel Co., 205 U. S., 105, 118, the court considered prior negotiations between the parties with reference to a liquidation of the damages, “ not for *75 the purpose of making a contract for the parties but to understand what contract was actually made.” Maryland Steel Co. case, 235 U. S., 451, 458. If we look to the said negotiations in the instant case, they emphasize the meaning of the specifications that it was the intention of the parties to agree in advance upon the amount and thus to liquidate the damages. If there had been no further reference in the contract to the subject of liquidated damages, and section 5 had been omitted in its entirety, said reference to the specifications would be sufficient to authorize a recovery of liquidated damages at $25 per day.
Was this intention of the parties carried into the contract subsequently signed by them ? Of course, the answer to this question must be found in the language which the parties have used. The intention must be given effect, and the purposes of construction are to ascertain it. But we have no right, in order to give effect to that intention, however manifest it may be, to change the meaning of their language or the rules of law. It frequently happens that the parties have failed in the written agreement to express the real intention. It may occur that they have not only fallen short of expressing it by the language used but that they have actually stated something which is contrary to it. “ In short, that meaning can not be given to a contract which can not be reasonably drawn from its language for the purpose of carrying out the intention of the parties thereto, however clearly established.” Wisconsin Bank v. Wilkins, 95 Wis., 111, 116.
Turning to the contract itself we find it is a form of contract intended to be applicable to a variety of engagements by contractors with the Government. Some of its provisions have little, if any, application to the subject matter of the particular contract involved here. The specifications provided that the contract to be executed would be “ in its general provisions ” in said form, a declaration that is compatible with the idea that it would express the real agreement of the parties. This contract, in its opening sentence, “ witnesseth that in conformity with the advertisement and specifications hereunto attached, which form a part of this contract,” the parties “ covenant and agree to and with each other as *76 follows.” The original of said contract, which we have examined, shows that following said quoted words there are on the first page two typewritten paragraphs. The clauses in the contract numbered from 2 to 6 appear on the back of said page, which is of legal-cap size, and are all-in print except one word “ may ” in the second clause; a few words filling blanks in the third clause, and no other written or typewritten matter and no elimination of any other statement of the printed form occurs except in clause 5 (the liquidated-damage clause), where the words “ twenty-five (25) ” are inserted in two places.
The language of the contract is as follows:
“ 5. It is further expressly understood and agreed that time shall be considered as an essential feature of this contract, and that in case of the failure upon the part of the party of the second part to complete this contract within the time as specified and agreed upon that the party of the first part will be damaged thereby, and the amount of said damages being difficult, if not impossible, of definite ascertainment and proof, it is hereby agreed that the amount of said damages shall be estimated, agreed upon, liquidated, and fixed in advance, and they are hereby agreed upon, liquidated, and fixed at the sum of twenty-five (25) dollars for each and every day the party of the second part shall delay in the completion of this contract, and the party of the second part hereby agrees to pay to the United States as liquidated damages, and not by way of penalty, the sum of twenty-five (25) dollars for each and every day the party of the second part shall delay in the completion of this contract, said delay not being the fault of the party of the first part.”
This clause is unambiguous and clear. Standing alone, it expresses everything necessary or essential to a clause designed to fix the entire amount of the damages, a complete “ liquidated damage clause.”. Not only is the language itself plain and comprehensive, but as worded it expresses the evident intention of the parties as deduced from the specifications, the said negotiations and said declaration in the beginning of the contract. Considering said provision, and the purposes of the contract, this court said in the former hearing:
*77 “ The subject matter of the contract was one peculiarly adapted to a liquidated damage clause and one which under the circumstances of the case is clearly enforceable.”
The defendants’ counsel calls attention to the fact, however, that the quoted paragraph from section 5 of the contract is followed by another, in which it is said: “It is further understood and agreed that the United States shall also have the right to recover from the party of the second part all costs of inspection and superintendence incurred by the United States during the period of delay,” and also the reasonable value of labor and materials furnished by them to the contractor while the latter is proceeding under the contract; and that the defendants were authorized to “ deduct or retain all of the above-mentioned sums ” from any sum that might be due the contractor.
The defendants’ counsel insists that both of said clauses must be given effect, and to attain that result that the first clause should be limited in its application to the uncertain damages, or damages uncertain in their nature, and so as not to include the provable actual damages, such as costs of inspection, for instance, are. They thus insist that the parties liquidated a part and not all of the damages, and their argument, which will be later adverted to, is that all items capable of accurate determination must be excluded from the liquidated-damage clause. Conceding and insisting that the contract shows a liquidation of some items, they insist that all the damages were not liquidated and, indeed, that they could not be, because in the defendants’ view a liquidation of the damages in advance must be confined to those which are uncertain in their nature or those which are difficult or impossible of definite ascertainment and proof.
Before noticing said contentions we may inquire what were the elements of damages which could have been within the reasonable contemplation of the parties when the contract was made. (1) That the sunken steamship, lying in a main channel of the harbor, obstructed and interfered with navigation in a channel which the Government had dredged at a large expense and was then engaged under a large appropriation for the purpose in dredging to a depth of 35 *78 feet. The masts of the vessel were above water and the lighthouse keeper had to set lights upon them at night. (2) A fact which subsequently developed was that it became necessary to cause the engineers of vessels passing the place of the contractor’s work to stop and the vessels to slow down or to change their course because the swell they produced hindered seriously the operations of divers employed on the Avreclc, and thus was added a further interference with navigation. (3) That the United States was paying the cost of inspection and superintendence, which cost after the breach Avould be actual damages. Of these elements of damage the first two, it may be conceded, were uncertain in their nature and their amount would be difficult, if not impossible, of definite ascertainment. The third element was damage capable of proof and definite ascertainment after a breach.
The Government’s contention would require us to say that the parties liquidated the first of said elements, and perhaps the second, but did not include in their liquidation the other element of damages.
We have stated that, considering the specifications in connection with the negotiations between the parties, the intention to fix the amount of the damages is clear. In the contract they declare that in case of breach the United States “ will be damaged thereby,” and that “ the amount of said damages being difficult if not impossible of proof,” etc. There is no suggestion here that only elements of uncertain damage are difficult of proof, but it is that the amount of the damages is difficult of ascertainment. Manifestly if there were some elements of damage which were incapable of definite proof and some elements of damages that could readily be proven, the amount, in the aggregate, of all the damages would still be difficult of definite ascertainment. The addition of the certain to the uncertain damages would not make the latter certain, and the “ amount of the damages” would remain uncertain. The said clause, having declared that the amount of said damages was difficult of definite ascertainment, further says that “ it is hereby agreed that the amount of said damages shall be estimated, agreed upon, and fixed in advance”; and that they were agreed *79 upon, fixed, and liquidated at $25 per day. If the succeeding clause be made to qualify the language which, standing in the first clause, expresses sufficiently the intention to liquidate all the damages, we would have to ignore the declaration that the amount of the damages was fixed and liquidated in advance and hear proof as to damages that are susceptible of proof. And thus would be introduced an issuable fact upon which evidence could be adduced—by the defendants to show the number of inspectors, the length of their service in the work, and their compensation; and by the plaintiff to question the accuracy of the defendants’ computation and the reasonableness of having so many inspectors if several were employed.
But the defendants argue “that whenever there are such items capable of accurate valuation the same must be expressly excluded from the liquidated damage clause lest the odium of penalty fall upon the latter.” They thus insist that the first clause shows that the amount of the damages of an uncertain nature was liquidated, but they argue that provable damages that are certain can not be blended with the uncertain damages and the whole be fixed and liquidated in advance. We can not accept this view, which, aside from the authorities on the subject, would produce a strange result, namely, that in the many contracts which have carried the liquidated damage clause and have been enforced according to the terms of that clause in this and other courts, it has never occurred to the parties to insist upon or the court to allow in addition other provable damages, upon the theory now advanced that such elements of damages are not to be made the subject of or included in the liquidated damage clause. It is doubtful whether in any case in this court where the liquidated damage clause appears it may not have been shown that there are actual certain and provable damages as well as uncertain damages difficult or impossible of definite ascertainment and proof. It is true that in some courts a test of whether the clause should be construed as providing a penalty or liquidated damages is whether it is easy or difficult to prove the actual damages, and where this test is recognized it is held that if the actual
*80 damages can be proved a stipulation in advance fixing the amount thereof is a penalty. Page on Contracts, vol. 2, sec. 1175, and cases there cited. But, as Prof. Page points out in the same section (p. 1803): “ This test, however, has been repudiated by the Supreme Court of the United States, and it has been held by them that even though the actual damages can be readily ascertained with certainty a stipulation for damages in advance is not necessarily a penalty.” He cites Sun Printing & Publishing Association v. Moore, 183 U. S., 642, and in that case Clement v. Cash, 21 N. Y., 253, meets approval. In the latter it is said that “ when the parties to a contract in which the damages to be ascertained growing out of a breach are uncertain in amoimt [italics ours] mutually agree that a certain sum shall be the damages in case of a failure to perform and in language plainly expressive of such agreement I know of no sound principle or rule applicable to the construction of contracts that will enable a court of law to say that they intended something else.” The Sun Printing Association case refers to Chicago House-Wrecking Co. v. United States, 106 Fed., 185, and Gay Manufacturing Co. v. Camp, 65 Fed., 794, which assert the doctrine now urged by defendants, that where actual damages can be assessed from testimony, the court must disregard any stipulation fixing the amount and require proof of the damages sustained, and uses this emphatic language (p. 660) : “ We think the asserted doctrine is wrong in principle, was unknown to the common law, does not prevail in the courts of England at the present time, and it is not sanctioned by the decisions of this court.” And in their review of the cases on the subject, the Supreme Court quote with approval two of the rules laid down in Bagley v. Peddie, 16 N. Y., 469, 471, as follows: “Sixth. If, independently of the stipulated damages, the damages would be wholly uncertain and incapable of being ascertained except by conjecture, in such case the damages will be considered liquidated if they are so denominated in the instrument. Seventh. If the language of the parties evince a clear and undoubted intention to fix the sum mentioned as liquidated damages in case of default of performance of some act agreed to be done, then the court will enforce the *81 contract if legal in other respects.” In the Sun Printing Association case the contention of the defendant was that the value of the yacht in question could be shown by proof to be less than the $75,000 stipulated in the contract, and it offered some evidence tending to show that fact, but the district judge refused to hear or consider such proof, and his ruling in that regard was assigned for error. (Opin., 659.) With this point apparently in mind, the Supreme Court again advert to the ruling in Gay Manufacturing Co. case, sufra, saying (p. 672) :
“ As we have previously observed, language is employed in that opinion which broadly interpreted seems to countenance the idea that if a jury can. ascertain the damages suffered by the breach of a stipulation, an agreement by the parties embodied in a written contract, fixing such damages will be treated as a nullity,” and declare that “such a doctrine is altogether untenable.”
The later cases in the Supreme Court, Bethlehem Steel Co. case, 205 U. S., 105; Maryland Steel Co. case, 235 U. S. 451, do not show any departure from the Sun Printing Association case, and certainly the cases to which we have referred do not sustain the broad contention that it is only damages which are uncertain in their nature or more or less conjectural which may be made the subject of a liquidation by the parties.
The defendant’s counsel rely upon City of Marshall v. Lamson, 133 Mich., 250. There, in one clause and in one sentence, it was provided that the contractor should pay $10 per day as liquidated damages for the delay, and, “ in addition thereto,” pay certain cost of inspection. The lower court having ruled that the clause provided a penalty and allowed a recovery for the inspection cost, that ruling among others was assigned for error in the Supreme Court. The latter court held that the contention that the inspection costs covered all actual damages was not tenable, and that the contract provided for liquidated damages which were recoverable, and reversed the case. The syllabus to that- case properly states the effect of that decision, as follows:
“ A provision in a contract for the construction of a sewer for a city-, under the head, ‘Penalty for noncompletion of *82 work,’ that, if the work is not completed by the stipulated time, the contractor shall pay the city $10 a day while in default, as liquidated damages for the delay, and also the cost to the city of engineering, inspection, and superintendence during the default, is, as to the $10 a day, not a penalty, but a proper stipulation as to damages.”
In the absence of any liquidated damage clause the cost of inspection incurred by the Government would, after breach, have been one element of its damages provable and recoverable as actual damages. Ross v. Loescher, 152 Mich., 386, 389. And in Geiger v. Cawley, 146 Mich., 550, it was held that the stipulation for damages relieved the plaintiff from the obligation of introducing proof of actual damages. All that can be claimed for the Lamson case is that it allows the parties to stipulate for certain elements of damage and to leave open for proof other elements where the language used clearly indicates that purpose.
We do not decide that parties may not properly agree as to some one or more elements of damage and exclude from their estimate or computation other provable damages. What we do say is that in such a case it could not be held that the parties fixed and liquidated the full amount of the damages. However persuasive the Michigan case might be, if the language of the contract in the instant case were similar to the language used in the contract there involved, it is sufficient to say the terms in the two cases are materially different.
In the instant case there are elements of uncertain damages, and there are elements of actual provable damages, and the total amount of the damages was, of course, uncertain, because, as we have suggested, the fact that a part could be readily ascertained would not affect the difficulty of proving the balance or render certain the whole; and the parties fixed and agreed upon the amount of the damages.
This would seem to follow from the purpose and meaning of the “ liquidated damage clause,” because the statement that the parties have liquidated the amount of the damages implies, in legal contemplation, that they have agreed, in advance of a breach of the contract, upon a sum certain in *83 amount (or that can from given data be made certain) which, in the event of a breach, the party undertaking to perform shall pay to the other as the measure of compensation for and in lieu of damages for the breach.
The question, therefore, is whether we can give effect to both of said clauses. We can not do so upon the idea advanced by the defendants, as above stated. They do not insist that the first clause does not liquidate in advance some damages, or that the second clause defeats the first entirely; but they do insist that the first must be confined to the amount of the uncertain damages, which can not be definitely ascertained by proof, and the second clause be let in to cover certain provable damages. To do that involves the interpolation in the first clause of words which would radically change the meaning of the words used and the plain meaning of the clause as written.
The second clause does not assume to modify the first, but to add to it. The first is a clause complete in itself—a good, carefully written, liquidated damage clause; and, standing alone, it must be construed as covering all damages. If, then, a clause, which in itself contains no exception or reservation but assumes to cover all damages, is added to by a subsequent clause, it seems to us that the subsequent clause must be regarded as attempting to add something to a sum which already includes the whole.
To hold as the defendants ask would be to say that while the parties intended and agreed to fix and liquidate the amount of the damages, and used words in their contract plainly sufficient to express such intention and agreement, yet by the use of the second clause they have defeated that purpose and left it uncertain whether they have liquidated any amount of damages. If by the first clause they did not liquidate the entire amount of the damages we can not, in view of their language, say they liquidated any particular part of the whole.
When they liquidated in advance the amount of the damages they fixed the amount which the one could be required to pay or the other be entitled to recover in case of breach, and the clause as much limits the defendants’ right to recover *84 as its affects the plaintiff’s obligation to pay. Both are bound by the liquidated damage clause. Where the language is plain there is no room for construction. We may indeed construe the words “right to recover” in connection with the context following them to mean something different from the literal meaning of those words, the literal meaning of “ recover ” being to obtain by judicial proceedings; to obtain by course of law. Gawtry v. Adams, 10 Mo. App., 29, 33; Hoover v. Clark, 7. N. C., 169, 171; Leslie v. York, 112 Ky., 712, 715. But when we have so construed that phrase we are not authorized to limit the plain language of the first clause by construction. And we therefore have two clauses, in the first of which the full amount of the damages appears to be liquidated and fixed-—which includes all elements of damages—while in the second clause another element is mentioned as an additional sum for recovery when that sum is included in the whole mentioned in the first clause. There should not be a double recovery for the cost of inspection, and that cost as an element of damage is comprehended in the amount at which the damages are liquidated and fixed. It follows that the second clause is repugnant to the first and can not consistently with the language used and the rules of law be reconciled with the first clause. One or the other must give way, and it is an old rule that where tAvo clauses in a contract are antagonistic to each other and can not be reconciled the first is allowed to stand. Wisconsin M. & F. Bank v. Wilkins, 95 Wis., 111; Bean v. Insurance Co., 111 Tenn., 186; Pittsburgh & S. R. Co. v. Central Trust Co., 141 N. Y., Supp. 66. The principle may be stated to be that the one of the two conflicting clauses which expresses the chief object and purpose of the contracting parties should be sustained.
The rule has been applied in a variety of cases. In Wisconsin M. & P. Bank v. Wilkins, 95 Wis., 111, it appeared that by one clause in a contract the parties had plainly bound themselves in a joint and several obligation of guaranty of certain indebtedness of a corporation; and in a later clause of the contract there was a provision: “ It is understood that we are to pay any sums which may accrue hereunder in the proportion which the amount of stock now held by each of us in said company bears in the whole amount of capital paid *85 in by said company.” When the bank as the holder of said guaranty brought suit upon it the defendants contended that the last clause limited the effect of the first and that their liability was to be determined upon the proportion stated in the quoted clause. The court held, however, that this construction was repugnant to the plain provisions of the first clause and that the first should stand, holding that whatever might have been the intention of the signers they had all of them in legal effect bound themselves jointly and severally to the bank for the entire indebtedness of said corporation and not simply in severalty for an amount proportioned to the stock held by them. The court further suggested that the only application which could be given to the last clause was that it fixed a rule of contribution as between the defendants themselves.
In Bean v. Insurance Co., 111 Tenn., 186, the question turned upon the construction of two clauses in an insurance policy, by which in the one clause the plaintiff was insured for one year from the date of the policy and by a second clause it was declared that the insurance should not cover disability from any disease if contracted within 15 days from the date of said policy, the effect of which would be to cut down the term of insurance from 12 months to 11^ months. The court declared that it was a case of clear repugnancy, which no sort of construction could reconcile, and that the second clause should be rejected. The court thus states the rule: “ If clauses of a contract are repugnant, that one which expresses the chief object and purpose of the contract must prevail, while clauses containing provisions subordinate to the chief object and purpose of the contract must give way.”
In Straus v. Wannamaker, 175 Pa. St., 213, the contract contained a strict guaranty of 50 per cent profit on a transaction between the parties, followed by a clause the literal effect of which was to limit or partially destroy such guaranty. The court said: “ The obvious method of construing such a contract is to hold that the parties clearly stated their purpose in the beginning.”
The principle was applied by Judge Lurton in Employers’ Liability Corp. v. Morrow, 143 Fed. Rep., 750, where, referring to the above-mentioned cases, he states that if the *86 agreement in the prior clause is antagonistic to the agreement in the later clause the latter must yield to the other. He states (p. 755) : “But it is a well-settled principle of construction that if two clauses are repugnant and can not stand together, the first will stand and the last will be rejected. * * * We are the more disposed to apply this principle to a contract such as this because the instrument is not drawn systematically and terms are employed which signify a considerable degree of carelessness. In such case it is more easy to conclude that the earlier parts of the instrument which most plainly set out the contract between the parties should prevail over a vague subsequent provision which would completely alter the principal terms of the agreement,” if applied to the phase under discussion there.
In Cleveland v. Smith, 2 Story, 278, the principle is said to be “to give effect to the real intention of the parties, whenever it can be ascertained from the words of the instrument and the actual state of the facts; and, if there is a misdescription, to apply the common rules of interpretation to resolve the doubt and to give effect to the predominant intention” (p. 289).
Other cases involving the same principle are Grand Rapids Co. v. Van Dusen, 29 Mich., 431; Williams v. Hathaway, 6 Ch. Div., 544. In Story on Contracts, sec. 661, it is said: “ But if the subsequent stipulation contradict and restrict what was distinctly stated and constituted a principal inducement to the contract it will be of no effect.”
That principle is applicable here. The parties agreed upon and fixed an amount as liquidated damages, as is clearly shown by their negotiations. The specifications declared that the contract would provide for liquidated damages at $25 per day. The contract by express reference “ witnesseth that in conformity with the advertisement and specifications hereunto attached, which form a part of this contract.” The agreement follows. In language clearly expressing the fact and the said intention the parties have said in the contract that the amount of the damages have been liquidated and fixed and agreed in advance to be paid in a definite sum. The amount so agreed upon must be held *87 to have included any damages to arise by reason of the costs of inspection, and therefore the said clause comprehends all of the recoverable damages.
We think, therefore, that the second clause should yield to the first, because by the language of the first the intention of the parties is made plain, and by attempting to modify the first by the second the meaning of the first becomes uncertain. By what right, in view of the language which the parties have used, can we say that only certain elements of damage were contemplated? By what right can we interpolate words into the first clause and then say that the parties meant what the clause, with the interpolation, would be held to mean? We can not make a new contract for the parties.
Where we can effectuate the intention of the parties evidenced by their language and the circumstances of this case it is our duty to do so. The intention to fix and liquidate the amount of the damages is, we think, clear. We do not undertake to lay down a rule applicable to all cases and prefer to confine our ruling to the facts and circumstances developed in this case. We adhere to our former conclusion, and the defendants’ motion for a new trial should be overruled. And it is so ordered.
Booth, Judge, Atkinson, Judge, and Downey, Judge, concur.
Barney, Judge, dissents.