GRAYLING LUMBER COMPANY *v.* HEMINGWAY.

Opinion delivered April 16, 1917.

1. LOGS AND TIMBER—CONTRACT TO HAUL.—Evidence *held* sufficient to go to the jury on the issue of the formation of a contract to cut and haul logs.
2. CONTRACTS—BREACH—RIGHT OF OTHER PARTY.—The obligations of a contract are mutual, and a breach by one party will relieve the other.
3. CONTRACTS—STRICT PERFORMANCE—WAIVER.—The strict performance of a contract according to its terms, may be waived.

4.  CONTRACTS—BREACH—WAIVER.—An instruction on the question of waiver should be couched in general terms, and so framed as to submit the question to the jury to determine whether or not the appellant, by its conduct, as shown by the testimony, had waived an alleged breach of the contract on the part of the appellee.

5.  TRIAL—INSTRUCTIONS—JURY QUESTION.—Where an instruction gives undue prominence to a particular fact and assumes that there was no breach of contract under such fact which is an issue for the jury, it will be held to invade the province of the jury.

Appeal from Desha Circuit Court; *W. B. Sorrells,* Judge; reversed.

*Jack Bernhardt* and *Samuel Frauenthal,* for appellant.

1.  The law of this case was settled upon the former appeal. 51 Ark. Law Rep. 356. It was there decided that before there could be a binding contract, it was necessary that the terms of the contract should make it mutually binding upon both parties, and this must be gathered from the terms of the contract itself. There was no mutuality. 124 Ark. 354.

2.  The court erred in its instructions to the jury. The breach by appellee released the appellant. 93 Ark. 472.

3.  It is erroneous to single out and give improper prominence to particular facts or evidence. 75 Ark. 76.

4.  The damages claimed were loss of profits. The testimony must be positive as to the amount of damages. and not left to speculation or imagination. 103 Ark. 584; 78 *Id.* 336; 91 *Id.* 427; 97 *Id.* 522; 105 *Id.* 421; 13 Cyc. 53.

5.  The verdict is excessive.

*F. M. Rogers,* for appellee.

1.  The question of mutuality, or lack thereof, was submitted to the jury, upon an instruction approved by this court on the former appeal. 124 Ark. 354. The fourth instruction was there approved.

2.  The question of breach of contract by appellee was submitted upon proper instructions, and the jury found that there was no breach by appellee.

3. The jury, by its verdict, found for appellee; that he was not negligent in the performance of his work.

4. The loss of profits was established with reasonable certainty. 69 Ark. 219; 78 *Id.* 336.

5. The verdict is not excessive and is sustained by the evidence. There was no error in the instructions.

WOOD, J. I. This suit was instituted by the appellee against the appellant to recover damages for an alleged breach of a verbal contract. The appellee alleged, in substance, that appellant had employed him to haul logs, at varying prices according to varying distances, from February 15, 1915, during the balance of that year; that appellee entered upon the performance of the contract and delivered logs thereunder until the 13th day of May, 1915, when the appellant, without cause, refused to permit him to continue further in the performance of his contract and thereby broke the contract, to the damage of the appellee in the sum of $12,000, for which he asked judgment.

The answer denied all the material allegations of the complaint, and alleged that the appellant had paid plaintiff for all services that the latter had rendered in hauling logs, and that the appellee's services were unsatisfactory.

This is the second appeal in the case. The case, on the first appeal, is reported in 124 Ark. 354.

(1) On the second trial it was contended that according to the undisputed testimony of the appellee there was no binding contract entered into between the parties. On the former appeal we said: "It is a general principle in the law of contracts that an agreement entered into between parties to a contract in order to be binding must be mutual; and this is especially so when the consideration consists of mutual promises. In such cases, if it appears that the one party never was bound on his part to do the act which forms the consideration for the promise of the other, the agreement is void for want of mutuality."

The appellee testified that he entered into a contract with appellant through its local manager, Terry, for the hauling of logs. His testimony concerning this is as follows: "In February, 1915, Terry came to me at the Kimball mill yard down here, and asked me to put my teams to help log the mill, and I told him that I would not put the teams in the mud and water and ice unless he guaranteed me work for the balance of the year, and he guaranteed to give me work, and then I went ahead and moved my teams out, with the understanding that I would not go unless he did give me the work for the balance of the year. Terry said that he would pay me the same prices that he did in 1914." Here witness specified the prices to be paid, showing varying prices for the varying distances that the logs were to be hauled.

Appellee stated that he moved his outfit, consisting of forty mules, eight wagons, and the balance of the equipment, and began work. Appellee was asked: "When you went on this work, was there any understanding or agreement that you could quit at any time that you saw fit before the first of the year?" and answered, "No, sir." He was then asked: "What was your understanding of the agreement with reference to that?" and answered, "My understanding was that I was under contract to go out there and help log the mill, and if I failed I was obligated as much as the Grayling Lumber Company was to fulfill this contract." Appellee was asked: "Did you know what would happen if you failed to fulfill your contract?" and answered, "Yes, sir; I would be liable to suit—to be sued for damages." He was then asked: "Suppose they had gotten judgment against you, what would that have meant to you?" and answered, "Well, at times we had from one hundred to two hundred, and sometimes three hundred thousand feet of logs on the yards unpaid for as a hold-back between pay days."

In addition to appellee's own testimony, other witnesses testified in his behalf to declarations of Terry, the

manager, in conversations with them which tended to prove the contract as alleged in the complaint.

Terry testified that he made no contract with the appellee; that he made an agreement with appellee's father, but there was no agreement that the father or any one under him should work for any stated time.

Giving this testimony its highest probative value in favor of the appellee, it tended to show that there was a contract between the appellant and the appellee, as alleged in appellee's complaint. The testimony of appellee tends to show what the terms of the contract were, and that these terms were mutually binding upon the parties. At least, the testimony was sufficient to justify the court in submitting that issue to the jury, which it did under correct instructions.

II. Among others, the court gave the following instruction: (4) "If you find from a preponderance of the evidence that plaintiff did leave some logs in the woods, but that he afterwards hauled and delivered those logs to defendant's agent, and that they scaled and accepted and paid for same, that this act alone would not constitute a breach on the part of the plaintiff."

A witness for the appellant testified that he was appellant's woods foreman, and as such laid out the strips of timber for the appellee to log on during the year 1915. It was wet when appellee commenced in February, and there were lots of logs left on the strips by appellee which had to be hauled off the strips, whereas, the rule was that the hauler should clear each strip as he went. Witness, as the woods foreman, directed the haulers to begin at the back end and haul the logs clean and when a strip was completed, the hauler was to notify him, and then he would lay off another strip. Witness had to send appellee back lots of times to haul logs off of the strips which he had left there. Sometimes appellee would report that he had a strip completed, and witness would go back and see if they were clean, and he would find logs on them and have to send them back. On one occasion witness had to

send them back a third time for the purpose of taking off logs, and they got more logs than he had really found that had not been hauled; and witness had to employ a man extra in order to haul some of those logs, and there were some logs still upon the last strip from which appellee hauled. Witness had trouble with the appellee about stacking the logs along the track. The appellee's services and labor were not satisfactory. The logs were usually culled in the yards. Sometimes when a cull was found in the woods, witness would write "Cull" on it, if it was a cull. Some were culled in the woods and some were culled on the track. Witness was asked why all the culling was not done at one place, and answered: "Well, the simple fact is that you put as many teams as I had to look after out there, the scaling and the laying out of those strips, I could not see the logs as fast as they laid them out. I had to get extra men to help me do that. The land was covered by very heavy undergrowth."

The answer does not specifically set up a breach of contract on appellee's part, but it does allege that the services which appellee rendered were unsatisfactory. And the appellant was permitted to introduce, without objection on the part of the appellee, the above testimony tending to prove that the appellee performed the services in such a careless and negligent manner as to warrant the submission of the issue to the jury as to whether or not he had breached his contract, and the court did submit that issue in an instruction given at the instance of the appellant, and without objection on the part of the appellee, as follows:

"The court instructs the jury that if they find that there was a contract between the parties, as alleged, and they further find from the testimony that the plaintiff performed his contract in an unskillful, careless and negligent manner, then the court instructs you that the defendant had the legal right to discharge the plaintiff and annul the contract, and if you so find, then your verdict should be for the defendant."

(2)  If there was a contract, its obligations were mutual, and if the appellee failed to comply with the contract on his part, he could not hold appellant to a compliance on its part.  As was said in *Mo. Pac. Ry. Co.* v. *Yarnell,* 65 Ark. 320, "The failure of one party to a contract to comply with its terms releases the other party from compliance with it."  See, also, *Berman* v. *Shelby,* 93 Ark. 478, and cases there cited.

This testimony, tending to prove that the appellee left logs in the woods which under his contract he was required to haul, and that he failed to stack the logs along the track as the contract required, was sufficient to justify the court in submitting to the jury the issue as to whether or not there was a breach of contract on the part of appellee.

The evidence discloses that the work was done in strips.  After one strip was completed by appellee, appellant assigned him another strip.  If appellant, after discovering that appellee had left logs in the woods scaled, accepted, and paid for same, and then assigned appellee another strip to work, this would tend to prove that appellant had waived or condoned appellee's breach of contract to that time.  But if appellant, after certain strips had been completed by appellee, refused to assign another strip and refused to further continue appellee after discovering the breach, this would tend to prove that there was no waiver or condonation.

The court, in connection with the last instruction set out above, should have presented also the theory and contention of appellee, that if there was a breach of contract on his part such breach was waived or condoned by the appellant.  There was testimony to warrant the submission of this issue to the jury.  One of the witnesses testified that when the appellee was dumping the logs behind the trees more than sixty feet from the track, in violation of the contract, that he called appellee's attention to it, and that appellee would sometimes go and get them, but would let them go for several days; that these logs were

finally scaled by the witness and turned in and paid for. When appellee left logs in the woods and witness told him to go back and get them, and he did so and brought them in, witness scaled them up and accepted them.

(3) The strict performance of a contract according to its terms may be waived.

But while the testimony was sufficient to warrant the court in submitting the issue of waiver on the part of appellant of a breach of contract, if any, on the part of the appellee, the court did not correctly submit that issue in instruction No. 4, *supra*. That instruction was calculated to confuse and mislead the jury. It was perhaps intended to cover the question of waiver, but really did not do so. It only directed attention to the single fact of leaving logs in the woods, and told the jury that if appellee did leave logs in the woods, but afterward hauled and delivered these logs, and that same were scaled, accepted and paid for, that this fact would not constitute a breach of contract on the part of appellee. The testimony disclosed other facts than the matter of leaving logs in the woods which appellant contended constituted a breach by appellee of his contract.

(4-5) Any instruction on the question of waiver should be couched in general terms and so framed as to submit the question to the jury to determine whether or not the appellant, by its conduct, as shown by the testimony, had waived any alleged breach of contract on the part of the appellee." The instruction was objectionable and prejudicial because it gave undue prominence to one particular fact and assumed as a matter of law that there was no breach of contract under the facts stated when this was an issue to be determined by the jury. *Western Coal & M. Co. v. Jones,* 75 Ark. 76. The instruction invaded the province of the jury.

III. We pretermit any discussion of the contention on the part of the appellant that the evidence was not sufficient to show the amount of damages on account of loss of profits, and that the verdict is excessive. These are not

necessary for the determination of the issues on a new trial.

For the error in giving instruction No. 4, the judgment is reversed and the cause remanded for a new trial.