**DICON, INC., a corporation, Appellant,**

v.

**MARBEN CORPORATION, Appellee.**

No. 79–1334.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 8, 1979.

Decided April 2, 1980.

Rehearing Denied April 25, 1980.

Emmett R. Cox (on brief), Nettles, Cox & Barker, Mobile, Ala., and Glenn A. Altman (on brief), Sterling & Altman, Fairview Heights, Ill., for appellant; and Robert H. Allen, Mobile, Ala., on brief.

Forest M. Norville (on brief), Bruce & Southern, Memphis, Tenn., for appellee.

Before GIBSON, Chief Judge,* and ROSS and STEPHENSON, Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge.

Dicon, Inc., a general contractor, brought this diversity suit[1] to recover the balance due it under a contract for the construction of a fifty-unit housing project in Charleston, Missouri. The District Court[2] determined that the developer, Marben Corporation, owed Dicon $9,999.75. Dicon appeals, claiming that the District Court erroneously allowed certain set-offs and credits against the amount due Dicon, thus substantially reducing the contract amount for completion of the project.

The District Court found that the basic contract price due Dicon was $650,000. From this amount it deducted $515,151.45 as the amount paid from the construction fund account pursuant to the contract, $37,-348.80 as undisputed set-offs representing payments to subcontractors and credit for landscape work performed by Marben, $43,-500 as liquidated damages, and $44,000 to be paid from contributions pursuant to a temporary funding agreement.

I.

Federal regulations set the framework for the housing project. 24 C.F.R. § 1272 *et seq.* (1975). The developer must obtain approval of the plans from the Department of Housing and Urban Development (HUD). The developer then arranges for financing and construction, and transfers the completed project to a not-for-profit corporation, which in turn leases to a housing authority which receives a fixed subsidy from HUD.

Initially, Marben accepted the bid of Clearspan Construction Company, Inc. as general contractor. On July 27, 1972, Marben forwarded a contract for construction of the project to Clearspan. In a letter to Clearspan, dated August 18, 1972, Robert Lafferty, senior vice-president of Marben, specifically stated the understanding that Clearspan's signature on the July 27, 1972, contract "is conditioned upon final approval of the plans and specifications by the HUD

---

* The Honorable Floyd R. Gibson was chief judge of the Eighth Circuit at the time this case was heard, but took senior status before the opinion was filed.

1. The amount in controversy exceeds $10,000 and there is complete diversity of citizenship among the parties. 28 U.S.C. § 1332 (1976).

Missouri substantive law applies. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

2. The Honorable H. Kenneth Wangelin, Chief Judge, United States District Court, Eastern District of Missouri.

area office in St. Louis, Missouri." On September 22, 1972, Clearspan requested of Marben that the "deadline on the project completion be extended equal to the amount of time which has elapsed between signing the contract and the time at which HUD will clear and approve a set of plans." On October 16, 1972, Clearspan elaborated on this theme by requesting that the time for commencement be set as of that date "(provided the plans are, in fact, approved by all necessary agencies and further delays will not occur), and the time of completion be June 16, 1973."

Before the conclusion of the above negotiations, Clearspan was purchased by and merged into Redman Industries, and desired to remove itself as the project's general contractor. On November 7, 1972, Clearspan entered into an agreement with Dicon to take over the project. Because formal substitution of the general contractor could not occur without individual consent from all the project's bondholders, the parties denominated the formal agreement a subcontract. The District Court found that the substance of this transaction was "a novation whereby Marben, Clearspan and Dicon mutually agreed to discharge Clearspan from its obligations as general contractor and substitute Dicon in its stead."

On November 15, 1972, Marben wrote Clearspan, stating that it had reviewed the subcontract and was "in agreement with all of its terms and conditions." The letter also stated that Marben agreed "to extend the completion date and all other terms of the subcontract to your contract." Although the subcontract explicitly designated November 1, 1972, as the commencement date, and June 1, 1973, as the completion

date, the District Court found that Marben intended to agree to extend the completion date to June 16, 1973, as requested by Clearspan.

Dicon commenced construction of the project, but work did not progress smoothly. Changes in the plans required additional work or alteration of work previously done. Mistakes were made requiring corrective work. The weather contributed to the delay, and the delays caused financing difficulties. Ultimately, the architect in charge of the project, William Bekemeyer, determined that the project was substantially complete on February 4, 1974.

On appeal, Dicon argues that the District Court erred in its computation of the amount due Dicon by allowing the developer to recover liquidated damages for delays for which the developer was at fault; for failing to extend the completion date for all of the weather delay claims accepted by the architect; and by crediting Marben with $22,000 advanced by Clearspan pursuant to a temporary funding agreement.

## II.

The subcontract between Clearspan and Dicon, and accepted by Marben, provided for liquidated damages in the amount of $200 per day.[3] The total delay from June 16, 1973, to February 4, 1974, constituted a total of 232 days. Dicon argues that this amount must be adjusted to reflect extensions of the completion time resulting from (1) delay in the work resulting from the failure of HUD to approve plans and specifications within a reasonable time; (2) the failure to have the site cleared and ready for work; and (3) bad weather.[4]

---

**3.** Article 3 of the Subcontract provided in relevant part:

Liquidated damages of $200.00 per day beyond June 1, 1973, which damages are sufficient to cover "finance charges" equal to the full daily principal and interest upon the first mortgage bond issue of the Leased Housing Corporation of Charleston, shall be paid by the subcontractor to the Leased Housing Corporation of Charleston, The Housing Authority of the City of Charleston and the Capital National Bank of Houston, Texas, as trustee

for the bond holders of the first mortgage bonds of the Leased Housing Corporation of Charleston, as their interests may appear.

**4.** Article 8 of the General Conditions of the Contract for Construction provides in relevant part:

If the Contractor is delayed at any time in the progress of the Work by any act or neglect of the Owner or the Architect, or by any employee of either, or by any separate contractor employed by the Owner, or by changes ordered in the Work, or by labor disputes,

The District Court rejected Dicon's argument that the completion date should be extended because of the absence of final plans approved by HUD. It found that the absence of HUD approval did not prevent the contractor from performing work on the project. Furthermore, it found that Dicon had assumed the risk of any delays occasioned by the absence of final plans from HUD by signing a contract with a fixed completion date with full knowledge that no final plans had yet been received from HUD. The court noted that Dicon itself was responsible for many time problems. In particular, one supervisor used an old set of plans even after he had been advised to use a revised set.

These findings by the District Court are not clearly erroneous, and we are bound to accept them. Clearspan's prior arrangements with Marben, frequently noting the absence and importance of HUD approval of the plans, should have alerted Dicon to the problem. Dicon could have conditioned the contract completion date upon receipt of final plans from HUD, but it did not. Furthermore, Dicon admits, in its brief on appeal, that "[t]here is no evidence in the record as to the total number of days of delay occasioned by the absence of final, approved plans."

The District Court did not address the issue of delay in clearing the construction sites in its opinion, and it did not award any extension of the contract completion date for this. Dicon asserts that site clearance was the responsibility of Marben because, although no contract provision refers to the responsibility for clearing the construction sites, when Marben purchased them, the seller, the City of Charleston, agreed to clear the sites and have them ready for construction by October 1, 1972. The sites were not cleared on time, and on January 31, 1973, Dicon finished clearing the sites. At trial, Dicon failed to prove any precise amount of delay that was caused by the delayed site clearance, though undoubtedly minor delay and costs were occasioned by this factor.

We note the applicability of the District Court's reasoning regarding the absence of final plan approval from HUD to the site clearance issue. Dicon signed the subcontract on November 7, 1972, with full knowledge that the sites had not been cleared for construction, even though the City had agreed to clear them by October 1, 1972. Additionally, Dicon failed to prove any specific instance where progress on the project had been impeded because of the site clearance situation.

The possible delay caused by the absence of HUD approval plans and the failure of the City to have the sites cleared by October 1, 1972, cannot be considered instances where delay should be excused because the owner prevents or hinders performance. *See United States v. John Kerns Const. Co.*, 140 F.2d 792, 795 (8th Cir. 1944); *Ark Construction Co., Inc. v. City of Florissant*, 558 S.W.2d 418, 422 (Mo.Ct.App.1977). These problems were not unforeseeable at the time Dicon signed the subcontract; on the contrary, the parties were well aware of them. The normal presumption in this situation is to infer that in deciding upon the contract completion date the parties took into account the possibility of delay arising from known conditions. The District Court did not err in refusing to award Dicon an extension of the completion date on the basis of the delay in site clearance.

### III.

The District Court did grant an extension of time because of weather conditions. Dicon asserted that it was entitled to an adjustment of 154 days because of bad weather, but the District Court granted an extension of the contract completion date for only 14½ days. The District Court based its limitation upon the contract provision that requires claims for extension of time to be

fire, unusual delay in transportation, unavoidable casualties or any causes beyond the Contractor's control, or by delay authorized by the Owner pending arbitration, or by any cause which the Architect determines may justify the delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine.

made within twenty days after the occurrence of the delay.[5]

Dicon submitted three letters addressed to Mr. Lafferty of Marben, outlining weather conditions that Dicon had claimed required extension of the completion date. These letters were dated January 11, 1973, outlining weather conditions from October 9, 1972, to January 5, 1973; March 23, 1973, outlining weather conditions from January 8, 1973 to March 16, 1973; and May 28, 1973, outlining conditions from March 19, 1973 to May 18, 1973. On January 4, 1974, Dicon received its response to the three letters it had submitted to Marben. The response came from Mr. Bekemeyer, the architect in charge of the project, who was responsible for granting extensions of time and settling disputes regarding contract interpretation. Bekemeyer found that a total of 109 working days were lost due to circumstances beyond the control of the general contractor, and that "[t]his would be equal to 22 'calendar weeks.'" This calculation included ten working days lost due to weather prior to the beginning of Dicon's contract.

The District Court rejected the architect's decision regarding an extension of time due to weather conditions, holding that only those weather delays which occurred within twenty days of the dates of Dicon's letters could be allowed to extend the time for completion of the contract. Dicon argues that the District Court erred because the bad weather should be considered a continuing cause of delay not subject to the twenty-day limitation, and because Marben waived the strict requirements of the contract by submitting the letters addressed to it to the architect and failing to object to the method or timing of Dicon's reports of weather delays.

Dicon submitted the letters to Marben, which in turn delivered them to the architect, apparently for the purpose of determining whether the request for an extension of time should be granted. Marben did not object to the architect nor to Dicon and appeared to accept Mr. Bekemeyer's assessment of the delay allowances contained in his January 4, 1974, letter. It was not until mid-1974 that Marben in any way indicated that it considered Dicon's letters not in conformity to the requirements of the contract.

Although we see no merit in the argument that the separate instances of bad weather fit within the definition of a continuing cause of delay, we agree with Dicon that the facts support the conclusion that Marben waived the strict requirements of the contract provision requiring notice within twenty days of the cause for the claim for an extension.

Dicon submitted to Marben lavishly detailed written requests for extensions of time due to weather delays. Marben gave every appearance of accepting these requests by forwarding them to the architect without objection. Nor did Marben object when the architect answered the requests by purporting to grant an extension for twenty-two calendar weeks. By engaging in conduct inconsistent with its contractual right to insist upon the twenty-day limit, Marben waived its right to challenge on this basis the architect's determination. *See United States v. John Kerns Const. Co.,* 140 F.2d 792, 796 (8th Cir. 1944). We also note that a finding of waiver comports with an equitable resolution of this controversy because Marben was not prejudiced by waiving the twenty-day limitation requirement. The provision is designed to avoid the presentation of stale claims, not easily substantiated, based on vague and uncertain oral evidence. *See Southwest Engineering Co. v. Reorganized School District R–9,* 434 S.W.2d 743, 751 (Mo.Ct.App.1968). Dicon's weather delay claims were advanced at intervals during the progress of the project and considered reasonable by the architect.

We basically accept the architect's determination regarding granting an exten-

5. Article 8 of the General Conditions of the Contract for Construction provides in relevant part:

All claims for extension of time shall be made in writing to the Architect no more than twenty days after the occurrence of the delay; otherwise they shall be waived. In the case of a continuing cause of delay only one claim is necessary.

sion of time for delay due to weather. Although he figured that the total delay amounted to twenty-two calendar weeks, he noted that ten working days of this delay occurred prior to the beginning of Dicon's contract. The 154-day figure (twenty-two calendar weeks) must be adjusted, therefore, to 142 days (subtracting ten working days plus two weekend days). Thus, Marben was entitled to liquidated damages for a total of ninety days (232 minus 142) at $200 per day, totaling $18,000. We find that this amount accurately represents the amount that should be deducted from the contract price as liquidated damages for delay in the completion of the project.

### IV.

■ The District Court deducted $44,000 from the amount due Dicon. This amount reflects an advancement pursuant to a temporary funding agreement dated December 26, 1973. The agreement provides that Marben and Clearspan would each advance to Dicon $22,000, and stated that "[s]aid advancement shall be credited toward any valid claim for final payment of Dicon from either Clearspan or Marben." All parties accepted that the agreement was separate and distinct from any other agreements and that the temporary funding agreement should "not be deemed to annul, modify or abridge any other rights, claims, duties and responsibilities that the parties may have by virtue of previous agreement other than specifically set out in this agreement." It further recited that the agreement was made merely to solve a temporary funding problem to enable the project to be completed with the least possible delay.

Dicon argues that Marben should not be entitled to a credit for the $22,000 advanced by Clearspan. The District Court did not address this issue further than to state that $44,000 was advanced by Marben and Clearspan by virtue of the temporary funding

agreement. Since we do not have the benefit of the District Court's analysis regarding this issue, we remand to the District Court with directions to take evidence and make a new determination of the issue.[6] The contract language is ambiguous and without further analysis we hesitate possibly to grant Marben a windfall of $22,000. The parties and Clearspan ought to be able to settle this issue among themselves. If not, the court will have to decide.

The total contract price due Dicon was $650,000. The District Court's deductions which were not challenged on appeal totaled $552,500.25. The District Court's amount of liquidated damages is modified to the sum of $18,000. The credit that Marben is entitled to by virtue of the temporary funding agreement will be determined by the District Court after further proceedings.

### V.

The judgment of the District Court is affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.

---

**6.** We note that the District Court dismissed without prejudice Dicon's claim against Clearspan; Marben's cross-claim against Clearspan; Clearspan's counter-claim against Dicon; Clearspan's cross-claim against Marben; and Clearspan's third-party complaint against Marx & Bensdorf, Inc. on the basis that the finding that the subcontract constituted a novation disposed of the various indemnity claims. The issue of whether Marben is entitled to a credit for the funds provided by Clearspan pursuant to the temporary funding agreement would appear to involve an indemnity issue with Clearspan as a necessary party.